Lane, C. J.
Israel Ludlow, the ancestor of the complainants,, was a proprietor, and one of the earliest settlers of Cincinnati, and possessed a large-property in lands. About the year 1794, Daniel C. Cooper, a relative of Ludlow, and then young, came to Ohio- and received patronage from Ludlow, and, through his influence, in his occupation of surveying, and in other employments.
Before the year 1801, Wilkinson, Dayton, Ludlow, St. Clair, Denman, and others, separately and together, had made extensive purchases in the seventh range of the Symmes purchase, and laid out the town of Dayton. Cooper entered into the employment of these gentlemen; removed to the vicinity of tho new town ; acted as agent for the proprietors in the sale of lots, and was engaged in. erecting a mill for Ludlow and himself, near that point.
When Symmes failed in .making his payments, and the title of' *507 his vendees was lost, the right of pre-emption was conceded by Congress to actual settlers ; and commissioners were appointed,, who held their sessions in Cincinnati, in the year 1801, to adjust controversies, and ascertain the persons properly entitled to certificates of entry. Cooper applied to this board, claiming the preemption of the land in controversy. His right *was admitted ; he entered the land, made the first payment, and received the inchoate title.
The following contract was made on December 23, 1803: “Whereas I, Daniel C. Cooper, of the town of Dayton, in the-county of Montgomery, have purchased of the United States certain lands in the seventh range of townships, near to, and including, the town of Dayton, in the Miami purchase, as may appear by the register’s and receiver’s office ; and have also procured of the commissioners certain certificates of rights of pre-emption in the seventh and eighth ranges, as aforesaid : Now know ye that I, Daniel C. Cooper, for the consideration hereafter named, hath granted, bargained, and sold, and by those presents do grant, bargain, and sell, to Israel Ludlow, of Hamilton county, one equal moiety, or half part of all said tracts, purchased as aforesaid, excepting certain tracts and town lots, including those lots which settlers are entitled to by virtue of their first settlement. The said I. Ludlow, for the consideration of the aforesaid grant, doth agree to pay one equal half part, or moiety, of the purchase money for the aforesaid tracts. The said parties are to bo equal in all payments toward the purchase money, and also the profits® or proceeds of sales of said lands, or any part of them. To which agreement we bind ourselves,” etc.
Ludlow died on January 21, 1804, leaving four children, the eldest of whom became of age in September, 1818, and the youngest in May, 1825. Administration of his estate was granted to James Eindlay and John Ludlow, his relatives and friends. Davis and Yeatman became guardians for the children.
The first payment on the land had been made by Cooper, in 1801, before the date of the contract; the other payments were due on the successive last days of December, 1803, 1804, and 1805, but were not made until 1813, to which time credits had been extended by successive acts of Congress.
Cooper continued to reside on the property in Dayton, treating it as his own, after the death of Ludlow. Some intercourse oc *508 curred between him. and the administrators of Ludlow, toward *lhe settlement of his accounts with the estate, which will be noticed hereafter; but no claim of ownership appears to have been made by them, nor was any money advanced by them toward the performance of the contract, and the guardians prove they •did not know of its existence. By 1808, Cooper appeal’s to have made sales, amounting nearly to $4,000; and by 1813, his sales seem to have been not less than $10,000 or $12,000. I do not find it sufficiently proved that this whole amount had then been realized in cash. Cooper received his patents in 1813, and retained the land until his death, in 1818. The defendants hold now by a title derived through his devise.
Upon these facts the complainants, heirs of Ludlow, prefer this ■bill, claiming half the unsold lands and half the profits of the sales. They rely upon the following propositions : That the contract of 1803 was but the execution of some previous arrangement, by which Ludlow and Cooper had long before held equal interests in the lands; that the first payment had been partly made, either with Ludlow’s money, or by money which Cooper owed to Ludlow ; that Cooper thenceforth held the lands to sell and manage on their joint account; that no subsequent payments were made, ■except with money derived from the sales, and belonging, in part, to the representatives of Ludlow ; that the title thus acquired was for their mutual benefit; that this bill is filed within the savings of the statute of limitations; and that the presumptions against th<?m, from lapse of time, are sufficiently repelled by the circumstances of their infancy, ignorance of their rights, the accidental loss of the evidence of their claim, and its very recent recovery.
The contract of December 23,1803, shows that Ludlow acquired an interest in the land. If it showed payment of purchase money by Ludlow, possession by Cooper, and no claim by him against Ludlow lor further acts of performance to complete the title of the latter, then Cooper’s possession would have been that of a naked trustee, and the complainants, protected by the savings of the statute of limitations, would have made a plain ease for relief, even at this late period.
*But the contract was not such evidence of right absolute in Ludlow. It created equal interests, but it imposed equal duties, and leit much to be done by both. Connected with attendant ■circumstances, it. showed a partnership in land, of which sales *509 were contemplated, and profits expected. It probably was intended between them that Cooper should continue in the management of the property, yet the writing specifies no exclusive services; but it requires, in terms, from Ludlow, the payment of equal shares of the purchase money, and the law exacts from him equal efforts toward the success of the scheme. The complainants, therefore, do not establish their right to relief without showing a substantial performance of their ancestor’s stipulation, or a sufficient reason for the omission.
“Viewed as an executory contract for the purchase of land at a. price to bo paid by Ludlow, it would bo difficult to maintain that anything had been done by him, whilst living, which deserves this name. Cooper had paid the first installment, and owed three others, one of which would become due in seven days from the-time of contracting. The assumption that Ludlow advanced money toward the first installment, is unsustained by proof. The-surmise of Cooper’s want of ability at that time amounts to a. doubt only, especially when we remember that his father was in easy circumstances, and that he himself had spent several years in the country, partly in the office, partly engaged in surveying,, and that he held a claim, in 1801, against the company he served,, exceeding $1,000, .which he accepted in pre-emption certificates.. The transactions between Ludlow and himself show extensive-accounts, but nowhere show balances. The imputation of purloining papers rests only on suspicion, and is proved only by hearsay. The insinuation of abstracting the account book is too-serious a charge to be made, on no other ground except that he was in the place where he might have committed the crime.
Then followed the death of Ludlow, leaving Cooper to bear, alone, the burden of the remaining debt, amid the hardships and ^difficulties incident to the early settlement of a then small, remote, and sickly town, unsupported by the credit, influence, industry, and other aids, which he had a right to look for in this-connection. Indeed, the right to the land was strictly lost to both by the failure to meet the installments of 1803, 1804, and 1805,. and it was by the indulgence of government that Cooper obtained from the sales enough to meet the payment of 1813. Where, then, shall we find in this statement any equitable or meritorious ground to bestow upon Ludlow or his heirs, the benefit of an enterprise-to which Cooper devoted the last fifteen years of his life, the fruits- *510 of which have been enjoyed for forty-one years, by him and his, in peace, without their contribution to its furtherance of the smallest imaginable aid?
My mind, however, is impressed yet more strongly with another view of these facts. The contract was made on December 23,1803; one payment had been made, another was just becoming due; the death of Ludlow occurred in a few weeks. Almost immediately .after Cooper could have heard of the event, a letter was written by him to Findlay, referring to the contract; another letter, in June •of that year, shows negotiations were pending for a relinquishment between Cooper and the administrators. Nothing further was beard of the contract for many years; its validity has never been ■asserted by the administrators or guardians ; no claim was set up •under it until 1825, and no attempt to enforce it until 1838. I can not resist the conviction that Cooper and the administrators settled this, with other claims, and that the latter relinquished, as far as •they were able, the interest of the estate of Ludlow to this land. If the equity of tbo heirs to the land had been perfect, the administrator can not impair it; but where it depends on the payments to be made by him on a contract to which he is a party at law, and he, acting in good faith, and for the apparent benefit of the estate, adjusts and compromises the demand, the dependent •equity may be extinguished. Howard v. Babcock, 7 Ohio, 73, pt. 2; Henry v. Conn, 12 Ib. 193. In estimating the propriety of such an arrangement, wo must not permit ourselves to be dazzled by the present *valuo of this property, but should revert to its condition in early times. The subject of arrangement was not the Dayton of 1844, but the Dayton of 1803. The estate of Ludlow consisted chiefly of land, which it was necessary to sell to pay ■other debts, and to support and educate his children. The exer•cise of sound judgment might well dictate that the family would be more benefited by the preservation of the lands from the sacrifices of forced sales, than by the remote and uncertain advantages likely to arise from the growth of an unhealthy village, containing ■less than twenty houses, on the then distant frontier. What else than the supposition of such relinquishment can explain the neglect of the administrators, to whom no other motives or intentions ■can be attributed, except the wish to promote the fortunes of their friends and sister’s family? Why else did James C. Ludlow refrain from pressing his claim in 1820? What restrained Garrard, *511 in 1825, a man of excellent judgment, accustomed to maintain his interests with vigilance and vigor, except that Findlay, then living, could furnish evidence fatal to his claims?
Another defense, equally perfect, arises in this case from the inability of the court to do complete justice, from lapse of time. If the complainants have any rights, they depend upon, and are limited by, the results of an account. The account between them ■as partners must take, as its basis, the state of indebtedness in 1803 (a basis which involves an examination and adjustment of .all previous transactions), and it must contain a statement of all moneys received on sales of Dayton lots; all advancements of purchase money; all disbursements made in good faith to promote ■the progress of the town ; all just allowances for personal services; and it must embrace the transactions of successive owners, from 1796 to 1844. No such account is practicable. No entries to serve for such have ever been made, and its elements are irrecoverably lost. It is no answer to say, it was Cooper’s duty to have kept it. He has held the property as his own since 1804, with the knowledge of the administrators, the necessary parties to such an account; and the claims of the devisees have been known *as exclusive since T825. Since, then, the complainants have no rights except lifter an account, which can not be justly taken, the rule of lapse of time works a complete protection for the defendants. Bill dismissed.
MEMORANDUM.
David Easton and others v. Pennsylvania and Ohio Canal Company. Judge Birchard, being originally of counsel for one of the parties, did not sit in the case.